## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **AUGUST M. LADESMA, III** | **CIVIL ACTION** |
| **VERSUS** | **NO:   18-12143** |
| **WALMART, INC., ET AL.** | **SECTION: "J" (4)** |

### ORDER

Before the Court is a **Motion to Compel (R. Doc. 49)** filed by the Plaintiff, August Ladesma, III seeking an order compelling (1) Defendants fully, completely, and without objection to Plaintiff's Interrogatories and Requests for Production of Documents, (2) to permit Plaintiff to re-depose Deputy Da'Shaune Harris as to any document not previously produced prior to this filing, and (3) order Defendants to pay Plaintiff's costs, fees, and expenses incurred in filing this motion. This motion is opposed. R. Doc. 55. The motion was heard by oral argument via videoconference on July 15, 2020.

### I.    Background

On December 2, 2018, Plaintiff filed his complaint pursuant to 42 U.S.C. § 1983 for claims arising from alleged violations of his Fourth and Fourteenth Amendment rights of the United States Constitution. R. Doc. 1. Plaintiff also makes claims pursuant to the American with Disabilities Act and general Louisiana tort law principles. *Id.*

Plaintiff alleges that on December 3, 2017, he went to the Wal-Mart on Chef Menteur Highway to shop and browse. While perusing through the CDs, Ladesma alleges he took his sunglasses off his head and set them down on the counter. Ladesma then forgot his sunglasses and returned home. Later in the day, Ladesma remembered he left his sunglasses at Wal-Mart and returned to the store to retrieve them. Ladesma walked back to the counter, found his glasses, and began walking toward the exit.

1

At the same time, Ladesma alleges that a Wal-Mart employee saw Ladesma took the glasses and attempted to leave the store without purchasing them, and, as such, contacted security. That day Defendant Deputy Harris was allegedly working a private off-duty security detail at the Wal-Mart on Chef Menteur Highway. Deputy Harris, in his Orleans Parish Sheriff's Office ("OPSO") uniform, approached Ladesma to confront him. Ladesma allegedly attempted to explain the situation, but, due to the fact much of his tongue is missing from cancer, could not articulate clearly.

As Ladesma continued to walk toward the exit, Deputy Harris allegedly tackled Ladesma from behind. Ladesma's forehead struck the ground causing a two-inch gash. Deputy Harris allegedly continued to place Ladesma in handcuffs. Ladesma allegedly was not mirandized nor told he was placed under arrest. Ladesma was then placed in a Wal-Mart room and asked whether anyone could pick him up. At some point thereafter, his brother, Al Ladesma, picked up August, the claimant, and drove him to the emergency room. On arrival at the hospital, August Ladesma was allegedly diagnosed with a severely dislocated shoulder along with a more than four-part fracture of the humerus head. Plaintiff had to undergo surgery and have a complete shoulder replacement to repair his shoulder.

Ladesma contends that Deputy Harris used unnecessary and excessive force in tackling him. Ladesma also contends that he is too old, frail, and sickly to have even resisted arrest as Defendants maintain. Ladesma also seeks damages for assault, battery, and false imprisonment. Ladesma also makes claims against Sheriff Marlin N. Gusman for improper and inadequate training of his subordinate deputies as well as  inadequate supervision of his subordinate deputies. Ladesma also claims many of Gusman maintains many unconstitutional policies of deliberate

indifference to the civil rights of citizens actionable under *Monell v. Department of Public Services*, 436 U.S. 658 (1978).

Defendants largely refute Plaintiff's rendition of the facts and contends that Plaintiff is a career criminal who frequented the Chef Menteur Wal-Mart and would fill a shopping cart full of items and exit the store without paying. R. Doc. 55. Defendants contend that Ladesma stole from Wal-Mart multiple times a day throughout 2017 and 2018. *Id.* Defendants also contend that the shoulder injury happened some days after the interaction between Deputy Harris and Ladesma.

As to this instant motion, Plaintiff contends that he is entitled to more complete responses to his Requests for Production and Interrogatories. R. Doc. 49. Specifically, Plaintiff contends that Defendants provided them with grossly deficient, misleading answers, and inapplicable objections to nearly every discovery request. R. Doc. 49-1, p. 2. Plaintiff also contends that Defendants refused to answer ten additional interrogatories beyond the twenty-five-limit imposed pursuant to Federal Rule of Civil Procedure 33, despite Defendants' earlier agreement to answer more. Plaintiff held a Rule 37 discovery conference with Defendants where Defendants ultimately agreed to supplement their responses and provide more documentation. Notwithstanding, Plaintiff contends that on June 24, 2020 the supplementation received was only slightly less deficient and non-responsive than Defendants' original responses. As such, on June 30, 2020, Plaintiffs filed this instant motion.

Defendants, in opposition, contend that Plaintiff is not entitled to much of the information he seeks where no part of this incident occurred in the jail or while Deputy Harris was on duty at OPSO. R. Doc. 55, p. 1. As such, Defendants maintain that the most the information sought is just not relevant. *Id.* In addition, Defendants maintain that information heavily focused on the Consent

Judgment before Judge Africk is vastly overbroad, seeking millions of pages worth of documents, and is also not relevant. *Id.* As such, Defendants contend that Plaintiff's motion be denied. *Id.*

The Scheduling Order in this case imposes a discovery deadline of September 22, 2020. R. Doc. 48. Plaintiff originally sought expedited consideration of this issue because the deposition of Defendant Deputy Harris was noticed for July 9, 2020 and Plaintiff's deadline to submit expert witness reports is July 22, 2020. R. Doc. 50. The Court declined to take the matter up on expedited consideration. R. Doc. 53.

## II.   <u>Standard of Review</u>

Discovery of documents, electronically stored information, and things is governed by Federal Rule of Civil Procedure ("Rule") 34. Rule 34 allows a party to request the production of "any designated documents or electronically stored information" or "any tangible things." *Id.* Similarly, Rule 33 allows a party to serve another party written interrogatories which "must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Both Rule 33 and 34 allow a party to ask interrogatories and request production to the extent of Rule 26(b). Fed. R. Civ. P. 33(a)(2); 34(a).

Rule 26(b)(1) provides that parties may obtain discovery regarding relevant information to any claim or defense as long as it is nonprivileged. Rule 26(b)(1) specifies that "[i]nformation within the scope of discovery need not be admissible in evidence to be discovered." Rule 26(b)(1) also specifies that discovery must be "proportional to the needs of the case, considering the important of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*.

Rule 37 provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if: . . . (iii) a party fails to answer an interrogatory submitted under Rule 33, or (iv) a party fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B). An "evasive or incomplete" answer or production is treated the same as a complete failure to answer or produce. Fed. R. Civ. P. 37(a)(4).

### III.   Analysis

#### A. Interrogatory No. 9—Sheriff Gusman

Interrogatory No. 9 seeks the indication of whether of documents, records, recordings, videos, photographs, statements, and evidence relating to any performance reviews, investigations, complaints, and/or grievances relating to Deputy Harris are stored, kept, and/or maintained electronically or in physical form, including: (a) name of file, software, and/or database where the above information is stored, kept, or maintained; (b) the physical address where the above information is stored, kept, or maintained; (c) the name, address, phone number, employer, and job title of any custodian responsible for maintaining any file, document, software, record, and/or database where the above information is stored, kept and/or maintained." R. Doc. 49-6, p. 12.

Plaintiff contends that these documents are relevant as they relate to Harris's training, culture, past incidents, and propensity for anger and violence. R. Doc. 48, p. 6.

Defendants contend these documents are not relevant where federal monitor documents in the Federal Consent Judgment litigation brought under the Prison Litigation Reform Act are not relevant to any OPSO operations that occur outside jail facilities. R. Doc. 55, p. 2. Defendants also claim because Plaintiff does not have a *Monell* claim against Deputy Harris, Plaintiff is not entitled to use of jail reports to show customs, practices, prior incidents, prior acts, and propensity towards

violence and excessive use of force as proof of a violation. *Id.* In addition, Defendants produced Harris's personnel file.

Defendants' production of Harris's personnel file seems to satisfy the interrogatory which is worded to seek the manner in which certain documents are formed. In addition, the Court finds that any additional information beyond that personnel file is simply not relevant where the Federal Rules of Civil Procedure contemplate both the production of hard copy and electronic documents. As such, the manner in which the Sheriff maintains those documents is not relevant to the question of whether or not those documents need ultimately be produced. As such, the Court denies Plaintiff's motion with respect for Interrogatory No. 9.

**B.  Interrogatory No. 10 and Requests for Production Nos. 19, 21, and 22**

Interrogatory No. 10 seeks the identity of every department or division Deputy Harris was assigned to during his employment with OPSO. R. Doc. 49-6, p. 13. Plaintiff contends this information is relevant because the information will help identify the specific in-service training that the OPSO provided to Deputy Harris as the OPSO sought to re-train its employees pursuant to the Federal Consent Decree as to the relevant issues including, but not limited to, use of force, incident reporting, etcetera. R. Doc. 49-1, p. 6.

Request for Production No. 19 seeks documents relating to any pre-service and in-service training, education, instruction, and re-training Deputy Harris received as part of his employment. R. Doc. 49-6, p. 14. Request for Production No. 21 seeks all education, training, instruction, and certifications Deputy Harris has received with the OPSO. R. Doc. 49-6, p. 15. Request for Production No. 22 seeks all re-education, re-training, and additional instruction Deputy Harris received following his POST certification. *Id.*

Defendants contend these documents are not relevant where federal monitor documents in the Federal Consent Judgment litigation brought under the Prison Litigation Reform Act are not relevant to any OPSO operations that occur outside jail facilities. R. Doc. 55, p. 2. Defendants also claim because Plaintiff does not have a *Monell* claim against Deputy Harris, Plaintiff is not entitled to use of jail reports to show customs, practices, prior incidents, prior acts, and propensity towards violence and excessive use of force as proof of a violation. *Id.*

As previously mentioned, Defendants have produced Deputy Harris's personnel file. While it may not be explicitly listed in the personnel file, Defendants aver this file contains all information related to Deputy Harris's job assignments as a court deputy and a jail deputy, of which he is also a member of the tactical response team in case of emergencies. No further information need be produced in response to this inquiry. As such, the Court denies as satisfied Plaintiff's motion with respect Interrogatory No. 10.

In addition, while Plaintiff limits his request to just that information related to Deputy Harris, the actor in this case, Plaintiff fails to limit the subject matter of the requests to the claims at issue—excessive force, assault, battery, etcetera. For example, Deputy Harris could have received active shooter training at some point during his employment with OPSO. This training has nothing to do with the claims Plaintiff makes against Defendant in that Plaintiff claims he was tackled while exiting the store. As such, the Court finds Plaintiff's Requests for Production Nos. 19, 21, and 22 overbroad and not tailored to relevant information. As such, the Court denies Plaintiff's motion with respect to Requests for Production Nos. 19, 21, and 22.

**C.  Interrogatory Nos. 12 and Requests for Production Nos. 23, 31, and 32**

Interrogatory No. 12 seeks the identity of all incidents, complaints, grievances, referrals, and/or investigations involving or relating to Deputy Harris. R. Doc. 49-6, p. 16. Request for

Production No. 23 seeks documents in connection with Interrogatory No. 12. R. Doc. 49-6, p. 16. Request for Production No. 31 seeks documents, reports, incidents, complaints, and data involving Deputy Harris's use of force, excessive force, use of restraints, take-downs, cell extractions, assault, battery, arrests, truthfulness, training, or another reportable incident. R. Doc. 49-6, p. 21. Request for Production No. 32 seeks all use of force and excessive force documents maintained in the Early Intervention System from January 1, 2010 to present. *Id.*

Plaintiff contends this information is relevant where a person's rights from the Fourth and Fourteenth Amendments are the same whether you are a convicted criminal inside the Orleans Justice Center jail system, in a Walmart, or walking down the street. R. Doc. 49-1, p. 7. Plaintiff also contends that his §1983 claims permit the use of a defendant's customs, practices, prior incidents, prior acts, and propensity towards violence and excessive use of force as proof of a violation. *Id.* Plaintiff also contends any objection by OPSO made on the grounds of HIPAA are baseless where HIPAA does not grant a privilege to the OPSO. R. Doc. 49-1, p. 7.

Defendant contends these documents are not relevant where federal monitor documents in the Federal Consent Judgment litigation brought under the Prison Litigation Reform Act are not relevant to any OPSO operations that occur outside jail facilities. R. Doc. 55, p. 2. Defendants also claim because Plaintiff does not have a *Monell* claim against Deputy Harris, Plaintiff is not entitled to use of jail reports to show customs, practices, prior incidents, prior acts, and propensity towards violence and excessive use of force as proof of a violation. *Id.*

In reviewing Interrogatory No. 12, the Court is of the opinion that, as written, the discovery request is overbroad. In addition to the request seeking all incidents, complaints, grievances, referrals, and/or investigations involving Deputy Harris, the request does not limit that request in

8

any sort of capacity to the actions implicated in his current matter, e.g., use of force, off duty detail, or injury to someone. In addition, the request is not temporally limited.

Notwithstanding,  Plaintiff makes claims for failure to properly train and supervise. Prior bad acts would serve as constructive knowledge Deputy Harris needed more training. The Court finds that limiting Interrogatory No. 12 to just those complaints that indicate use of force made against Deputy Harris between 2016 and 2018 relevant. As such, the Court grants as modified Plaintiff's motion with respect to Interrogatory No. 12 and Request for Production No. 23.

Notwithstanding, Request for Production No. 31 is not tailored to relevant information where it seeks information relating to Deputy Harris's involvement in cell extractions and truthfulness, which are definitely not of issue in this instant action. In addition, because the request seeks all "documents, reports, incidents, complaints" the request is overbroad to include every single action Deputy Harris has taken from to beginning of his employment until now whether considered proper or not. As such, the Court denies Plaintiff's motion with respect to Request for Production No. 31.

Finally, Request for Production No. 32 seeks documents far beyond the scope of this litigation. Beyond having an overly broad temporal period, seeking documents as far back as 2010, Request for Production No. 32 seeks all documents in the Early Intervention System relating to excessive force and use of force whether they relate to Deputy Harris, the actor in this case or not. As such, the Court finds this request more indicative of a fishing expedition and deny Plaintiff's motion with respect to Request for Production No. 32.

**D.  Interrogatory No. 13 and Requests for Production Nos. 24, 25, 33, 35**

Interrogatory No. 13 seeks the identity of all complaints involving all employees from January 1, 2014 to the present involving use of force, excessive use of force, assault, battery, take-

downs, mentally or physically impaired persons, arrests, detentions, training, off-duty details, and use of fore reporting. R. Doc. 49-6, p. 16. Request for Production No. 24 seeks all documents related thereto.

Request for Production No. 25 seeks all documents reflecting OPSO staff disciplinary investigations, disciplinary actions, internal affairs investigations, taken against Deputy Harris or other OPSO agents from January 1, 2015 to the present relating to the documents sought in Interrogatory No. 13. Request for Production No. 33 seeks all documents, reports, or data related to use of force and excessive force manually recorded or tracked from January 1, 2010 to the present. R. Doc. 49-6, p. 21. Request for Production No. 35 seeks all use of force documents relating to Deputy Harris from the date of his employment with OPSO commenced to the present. R. Doc. 49-6, p. 22.

Defendants objected on the grounds the interrogatory is overly broad where, for example, OPSO arrest upwards of 16,00 persons per year. As such, the request would result in millions of pages worth of documents. Defendants also object on the grounds of relevance.

Plaintiff claims, according to the policies produced, OPSO deputies are required to file incident reports, FIT reports, Early Intervention Reports ("EIS"), arrest reports, and other types of reports stemming from incidents involving certain categories of events. R. Doc. 49, p. 8. Plaintiff maintains these documents are discoverable, his requests cover these documents, and, as such, those documents should be produced. *Id.* Plaintiff finally contends this is not burdensome where these documents are regularly produced to the parties and court in the Federal Consent Judgment. *Id.*

Defendant OPSO maintains this request is overbroad where is has arrested, booked, and detained over 100,000 individuals in the six-year period, which would result in an unwieldly

production of information. R. Doc. 55, p. 5. Defendants also contend that this information is not routinely produced for the consent judgment, rather the monitors conduct a random review of reports on site. *Id.* Defendants finally contend, beyond the sheer volume of the request, information relating to the jail is not relevant in a case about an off-duty detail in Wal-Mart. *Id.* As such, Defendants seek the Court deny the requests.

Interrogatory No. 13 and Requests for Production Nos. 24, 25, and 33 seek documents far beyond the scope of the instant litigation where it seeks documents relating to all employees as opposed to documents juts relating to the actor in question, Deputy Harris. Plaintiff are not entitled to the documents he seeks. As written, these requests are overbroad and not tailored to the specific facts of this case. As such, the Court denies Plaintiff's motion with respect to Interrogatory No. 13 and Requests for Production Nos. 24, 25, and 33

Request for Production No. 35, however, seeks use of force reports solely relating to Deputy Harris. Notwithstanding, use of force and excessive use of force are not analogous. Every incident in which Deputy Harris has had to use force in his six years with OPSO is not relevant to the instant lawsuit, *e.g.*, him physically directing a criminal into his jail cell. The request is, therefore, overbroad as written. As such, the Court denies Plaintiff's request with respect to Request for Production No. 35.

### E.   Interrogatory No. 14 and Requests for Production Nos. 28, 29, and 30

Interrogatory No. 14 seeks all lawsuits, actions, and claims, against employees and agents which alleged negligence, assault, battery, false arrest, negligent hiring, negligent training, negligent supervision, use of force, excessive force, and civil rights violations from 2010 to the present. R. Doc. 49-6, 18-19. Request for Production Nos. 28 and 29 seek all documents related thereto. *Id.* Request for Production 30 seeks all deposition transcripts and videos of deposition

relating to lawsuits involving Deputy Harris or any other employee, agent or representative of OPSO. R. Doc. 49-6, p. 20.

Plaintiff contends this answer is deficient where Defendants fail to identify the federal ongoing consent judgement presided by District Judge Africk, *Lashawn Jones et al. v. Marlin Gusman, Sheriff, Orleans Parish et al.*.; Case No.: 2:12-cv-00859. R. Doc. 49-1, p. 9. Plaintiff further concedes it seeks documents as to the nearly 1,000 deputies, but because Plaintiff does not know the names of the deputies Defendants need to tender a list. *Id.* Plaintiff finally contends that this information is discoverable and relevant regardless of the admissibility of these documents. *Id.*

Defendants contend these requests are not relevant and would result in a substantial production where the OPSO is routinely subjected to pro se civil rights claims which are sometimes dismissed before the agency is ever served. R. Doc. 55, p. 5. Defendants contend Plaintiff seeking documents relating to over 3,000 lawsuits is not related to Deputy Harris's employment and not relevant to the case at hand. *Id.* Defendants also contend should Plaintiff desire such information such cases are as readily available to Plaintiff on PACER as it is to the Defendants. *Id.*

Interrogatory No. 14 and Requests for Production Nos. 28, 29, and 30 seek documents far beyond the scope of this litigation where they seek information beyond just Deputy Harris. The production of this information would likely result in millions of pages of documents, completely unrelated to the case at hand. The expense and burden of this far outweighs any benefit to the Plaintiff. Such that the requests are not proportional to the needs of the case. As such, the Court denies Plaintiff's motion with respect to Interrogatory No. 14 and Requests for Production Nos. 28, 29, and 30.

**F.  Interrogatory No. 15**

At the hearing, the Plaintiff also sought consideration of Interrogatory No. 15, which seeks the identity of every off-duty detail Deputy Harris worked from January 1, 2014 to the present. R. Doc. 49-6, p. 24-25. Specifically, Plaintiff seeks the name of the employer, the date of the off-duty detail, the location of the detail, the nae of the customer, and the amount charged for the off-duty detail. *Id.* Defendants object on the grounds of relevance. R. Doc. 49-6, p. 25.

The Court is of the opinion that the financial aspects of this request seek information that is not relevant. Neither the amount that Deputy Harris got paid nor the amount charged due or even the fact that Orleans Parish Sheriffs Office gets money is relevant. Plaintiff confuses the idea that because Orleans Parish is in some way benefited from their officers performing off-duty details that the Sheriff's Office *ipso facto* exercises control over off-duty details. As such, the Court denies Interrogatory No. 15 to the extent it seeks financial amount charged.

Notwithstanding, the Plaintiff avers he has asked for the report of the incident, as Deputy Harris has an obligation to report the serious incident to the Orleans Parish Sheriff Office, to no avail. Defendants contend there is no report for the incident where nobody was arrested, and the Plaintiff declined medical treatment via the ambulance called to the premises. Here, there are no documents to give. The Defendants have stated on record that they do not have a report and that the only report is in possession of U.S. Security, the company who hired Harris to work the detail. Defendants should provide Plaintiff a verified response confirming that no such report exists. Nothing additional is required. As such, the Court denies Interrogatory No. 15 in its entirety.

**G.  Interrogatories Nos. 19 and 20 and Requests for Production Nos. 48, 49, and 50**

Interrogatory No. 19 seeks the identities and addresses of persons who conducted Deputy Harris's criminal and credit background checks, polygraph testing, and mental and/or emotional

fitness tests. R. Doc. 49-6, p. 28. Interrogatory No. 20 seeks Defendants identify all aptitude, fitness, personality, psychological, and intelligence test performed on job applicants January 1, 2014 (when Harris was hired) to the present. *Id.* Request for Production No. 48 seeks job application and all other competency tests, psychological tests, assessments, pre-polygraph questionnaires used as part of Deputy Harris's hiring process. R. Doc. 49-6, p. 27.  Request for Production No. 49 seeks Deputy Harris's personality and psychological tests results. *Id.* Request for Production No. 50 seeks all documents relating to Interrogatory No. 20. R. Doc. 49-6, p. 28.

In response, Defendants have provided the name of the company who performed the psychological evaluation. As explained by the Defendants, the company only indicates whether the officer passed or failed the test. No other information is given.

The name of the individual officer who performed Officer Harris's background check is also unknown where the Sheriff's office rotates officers to run the background checks. There is no documentation of who ran a background check in that particular office on a particular day. The Sheriff's Office policy is to not include any criminal rap sheet in the personnel file. As such, the sole documentation that Deputy Harris passed the background check is that the personnel file exists in that he was cleared for hire on the application hiring documents.

As Plaintiff complained that the person assigned to perform background checks was not conducting them, Defendants offered to run an FBI Triple Item Background Check on Deputy Harris again.  Here, the Court is of the opinion that this satisfies the Defendants' obligations with respect to Interrogatory Nos. 19 and 20 and Requests for Production Nos. 48, 49, 50 where all other information sought is irrelevant or nonexistent, and, as such, the Court denies Plaintiff's motion with respect to these requests.

**H. Requests for Production Nos. 37 and 52**

Request for Production No. 37 seeks copies of all OPSO policies, procedures, manuals, rules, regulations, standards, protocols, training materials, directives, and/or compilations in effect from January 1, 2015 to the present. R. Doc. 49-6, p. 23. Request for Production No. 52 seeks the personnel file for Deputy Harris relating to OPSO written and published job qualifications, requirements, job application, standards, and description in effect from January 1, 2014 to the present. R. Doc. 49-6, 29.

Plaintiff contends that Defendants have not produced a complete compilation of policies in effect for any of the requested years. Specifically, Plaintiff complains OPSO Policy No. 401.04 is missing, OPSO Policy No. 301.09 did not go into effect until after the subject incident, and a table of contents reference by Defendants was not produced. *See* R. Doc. 49-6, p. 66. Also, according to Plaintiff, the OPSO private detail policy produced did not go into effect until twelve days after the incident and the one in effect on the day of the incident should be produced. R. Doc. 49-1, p. 10.

Defendants maintain they have produced the policies going back to 2009 including the detail policy and has submitted a verified Amended Response stipulating the same. R. Doc. 55, p. 6.

At the hearing, the Defendant assured the Court that the entire manual has been tendered to Plaintiff even though some numbering and indexes may have changed due to amendments published in the post-2016 manual (also tendered to Plaintiff). As a result, Plaintiff realized that none of the policy numbers were missing as previously alleged, but rather renumbered in the later

policy. For example, the private detail policy, now OPSO Policy No. 301.09, was, in the previous edition of the manual, OPSO Policy No. 301.16.

In addition, Plaintiff complains that the Defendants did not tender a human resource manual over in response to this inquiry. Plaintiff contends this is relevant where the human resource manual would contain a job description and possibility indication of a division dedicate to performing internal investigations regarding use of force.

Defendants in response aver that they do not have a human resource manual and while they have had a vast investigative services division in response to the monitor placed over the prison, a human resources division has never conducted an investigation of this sort.

The Court, here, is of the opinion that Plaintiff couches his question too broadly. The question should be limited to the facts of this case such as the division that investigates use of force during an off-duty detail. To seek the entirety of the manual assumes that the training used on-duty in the jail was to be used in an off-duty detail. The request conflates the relevant subject matter at issue. The Defendants have produced both the pre-2016 manual and post-2016 manual in its entirety. Nothing else need be produced in response to this request. As such, the Court denies as satisfied Plaintiff's motion with respect to Request for Production No. 37.

Request for Production No. 52 seeks the personnel file for Deputy Harris. In response, Defendants tendered to Plaintiff Harris's file. The Court considers this request satisfied and denies Plaintiff's motion with respect to the same.

## I. Interrogatory No. 21 and Requests for Production Nos. 38 and 53

Interrogatory No. 21 seeks a description of how the OPSO detail program worked or operated in December of 2017, including OPSO's role in the administration and operation of the detail program; U.S. Security's role in the OPSO detail program; the dates of any changes to the

administration and/or operation of the detail program; how deputies are assigned to off-duty detail; the persons responsible for collecting payment of off-duty details; the persons that receive a portion of payment for off duty details; and the percentage of money that the OPSO Detail program receives for a given off duty detail. Request for Production No. 38 seeks all OPSO policies, procedures, manuals, rules, regulations, standards, protocols, training materials, directives, and/or compilations in effect from January 1, 2015 to the present relating to off-duty details. R. Doc. 46-9, p. 23. Request for Production No. 53 seeks documents relating to the OPSO Detail Program that worked and operated in December 2017. R. Doc. 49-6, p. 29-30.

In response, Defendants produced some OPSO policies. *See* R. Doc. 49-6, p. 23. This includes the OPSO policy and procedure detailing the OPSO Detail Program. *See* R. Doc. 49-6, p. 30.

The Court notes again the inquiry into the financial structure of the Off-Duty Detail Program is not relevant to the case at hand. Notwithstanding, the Defendants stated the Sheriff's takes one dollar per officer for every hour worked off-duty as rental for uniforms. The Plaintiff is entitled to no more with regard to the money and payments inquiries in this interrogatory.

In addition, the Defendants have produced the pre-2016 and post-2016 manuals which both include the Off-Duty Detail Policy. The Court read the policy which effectively describes with particularity how the off-duty detail program functions. The Court, therefore, finds the policy manual responsive to the request. As such, the court denies Plaintiff's motion with respect to Interrogatory No. 21 and Requests for Production Nos. 38 and 53.

Notwithstanding, Plaintiff complains that there are inconsistencies in the responses as to whether Deputy Harris worked as an independent contractor or employee of U.S. security during the off-duty detail. Defendant clarified at the time of the incident that Deputy Harris was working

17

an employee of U.S. Security who received a W-2 Tax Form, despite discovery responses to the contrary. As such, the Court ordered Defendants to amend and reconcile its discovery responses to reflect such. In addition, upon oral request, the Court ordered the production of Harris's W-2s in response to Request for Production No. 28 propounded onto Deputy Harris.

### J.  Interrogatory No. 24

At the hearing, Plaintiff's counsel sought further information with regard to Interrogatory No. 24 which seeks identification of all incidents, stops, detentions, arrests, and incarcerations involving Plaintiff, his client. In response, Defendants produced the twenty-five-year arrest history of August Ladesma. While Plaintiff's counsel explained he was worried about the Defendants using jailhouse phone recording against Ladesma at some later point, Defendants represented there were no other jailhouse records it was going to use against Ladesma. As such, the Court is of the opinion that the rap sheet is responsive to Plaintiff's request and denies as satisfied Plaintiff's motion with respect to this interrogatory.

### K.  Interrogatory No. 27

At the hearing, Plaintiff's counsel sought further information with regard to Interrogatory No. 27, which seeks all interactions that Deputy Harris had with Plaintiff prior to and following the subject incident of this litigation. R. Doc. 49-6, p. 35. Defendant objected on the ground Plaintiff did not seek prior leave of Court to propound the excess interrogatory.

At the hearing, Defendant stated he would respond to request, but his client represented that he had numerous, almost daily interactions with Ladesma. While OPSO has turned over everything it has, Deputy Harris brought Ladesma to New Orleans Police Department ("NOPD"), who would refuse to book him due to his medical conditions. As such, Defendants maintain there

is nothing further to give Plaintiff because any summons would be with the NOPD and not the Sheriff's Department. As such, the Plaintiff subsequently withdrew this request.

### L.  Interrogatory No. 1—Deputy Harris

At the hearing, Plaintiff complained this request was not answered fully as Defendant did not provide names, aliases, nicknames, and alternative spellings. Defendant stated he would amend to reflect there are no additional names. As such, the Court denies as moot Plaintiff's motion with respect to Interrogatory No. 1.

### M. Interrogatories Nos. 9 and 16—Deputy Harris

Finally, Plaintiff's Interrogatory No. 9 to Deputy Harris seeks Harris identify any and all profiles and/ or accounts maintained on any social media platform or application. R. Doc. 49-6, p. 45. Plaintiff's Interrogatory No. 16 seeks the identification of every healthcare provider that has provided treatment, counseling, and or services involving and/or relating in any way to any emotional or mental health issues from January 1, 2005 to the present.

At the hearing, Plaintiff averred that this information is relevant where he speaks frequently of his work on his social media sites and has even taken selfies during private details. Plaintiff also contends that there are posts on Harris social media accounts that are suggestive of PTSD and anxiety. As such, the Court ordered Plaintiff to submit to the Court for *in-camera* review the documents relating the relevance of Deputy Harris's social media post.

Considering first, Interrogatory No. 9, the Court notes that the Plaintiff has submitted evidence that certain social media accounts have been deleted and others have been created under a different pseudonym.  The Court finds, given this removal of information and apparent attempt to hide accounts under the guise of different names, that Defendant Deputy Harris need identify

the social media platforms. Notwithstanding, the Court sees no relevance in his disclosing dating applications. Therefore, the Court will not allow Plaintiff to traipse through Harris's dating profile on applications such as Tinder or Bumble. As such, the Court grants Plaintiff's motion with respect to Interrogatory No. 9 to the extent it seeks Harris identify his social network platforms and messenger applications to the exclusion of dating applications.

Finally, in considering Interrogatory No. 16 seeking the identification of mental health care providers, the Court notes that multiple social media posts indicated the possibility of the existence of a struggle with mental illness. For example, there was a Facebook post made about correctional officers suffering from post-traumatic stress disorder ("PTSD") suggesting jail is difficult on more than just the prisoners. Posts were also made on Deputy Harris's Facebook public timeline which expressed a desire to give up and used words and phrases that indicated possible depression or anxiety. Because these posts suggesting a possible mental struggle the Court, therefore, finds that Interrogatory No. 16 relevant. Notwithstanding, in reviewing the inquiry, the Court notes the request is overbroad as written where it seeks mental health records over a period of fifteen years. As such, the Court will limit the temporal period to January 2016 to December 2019. As such, the Court grants Plaintiff's motion with respect to Interrogatory No. 16 to the extent it seeks identification of Deputy Harris's mental health care providers and treatments from January 1, 2016 to December 31, 2019.

**N. Re-Deposition**

Plaintiff seemingly appears, in his memorandum, to abandon his request to redepose Deputy Harris. While Plaintiff contends that the parties were set to depose Deputy Harris on July 9, 2020, after Plaintiff filed his original motion, Plaintiff simply complains he did not receive adequate documents to proceed with a meaningful deposition. R. Doc. 49-1, p. 5.

While the Court doubts the entire deposition was rendered meaningless, the Plaintiff should be permitted to depose Deputy Harris on topics relating to this forthcoming information. As such, the Court will permit Plaintiff to reopen the deposition of Deputy Harris limited in subject matter to address mental health care providers, treatment, and services or any additional social media platforms disclosed as a result of this order only.

**O. Attorney's Fees**

Because many of the Defendants' objections were well-founded, the Court finds this motion is not appropriate for attorney's fees. As such, the Court denies Plaintiff's motion seeking the same.

**IV.   <u>Conclusion</u>**

Accordingly,

**IT IS ORDERED** that  Plaintiff's **Motion to Compel (R. Doc. 48)** be **GRATED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the motion is **GRANTED** with respect to Interrogatory No. 28 propounded upon Deputy Harris.

**IT IS FURTHER ORDERED** that the motion is **GRANTED AS MODIFIED** with respect to Interrogatory No. 12 and Request for Production No. 28 to the extent they seek just those complaints made against Deputy Harris that indicate use of force between 2016 and 2018, as well as Interrogatory No. 9 propounded upon Deputy Harris to the extent Plaintiff seeks Harris identify his social network platforms and messenger applications excluding dating applications; Interrogatory No. 16 propounded upon Deputy Harris to the extent Plaintiff seeks identification of Deputy Harris's mental health care providers and treatments from January 1, 2016 to December 31, 2019; and to the extent Plaintiff seeks to redepose Deputy Harris limited in subject matter to

address mental health care providers treatment or any additional social media platforms disclosed as a result of this order only.

      **IT IS FURTHER ORDERED** that the motion is **DENIED** with respect to Interrogatories Nos. 9, 10, 13, 14, 15, 19, 20, 21, and 24 and Requests for Production Nos. 19, 21, 22, 24, 25, 28, 29, 30, 31, 32, 33, 35, 37, 38, 48, 49, 50, 52, and 53 propounded upon Sheriff Gusman; Interrogatory No. 1 propounded upon Deputy Harris; and to the extent Plaintiff seeks attorney's fees associated with the filing of this motion.

      New Orleans, Louisiana, this 3rd day of September 2020.

                **KAREN WELLS ROBY**
      **CHIEF UNITED STATES MAGISTRATE JUDGE**